JUSTICE        The judgment is reversed, with costs. Cause remanded, &c.
v.
KIRLIN.        *C. L. Dunham* and *Horace Heffren* for the appellant.

## JUSTICE v. KIRLIN.

Suit by *A.* against *B.* for slander. The complaint averred that before the time
of speaking the slanderous words, a sum of money had been stolen from
one *C.*, and that *B.* spoke of, and concerning the plaintiff, these false and
slanderous words, viz., '·He is the man that took the money, I know it."
A witness for the plaintiff having testified to the speaking of the words,
was·then asked, " what did *B.* mean by the language he made use of?"
to which the witness answered, "he meant, I suppose, that *A.* was the
man who stole the money."

*Held,* that as there was no averment that any of the words used had a local
or provincial meaning, the jury should have been left to judge, from
the speaking of the words, and the attending circumstances, of the mean-
ing intended to be conveyed by the use of them ; but as the circumstan-
ces attending the speaking of the words showed that they referred to
the larceny, the defendant was not harmed by admitting the evidence.

*Held,* also, that where a witness is inquired of as to the state of feeling
existing between the parties to an action of slander, with a view to estab-
lish malice, the question should be directed to the time of speaking the
slanderous words.

*Held,* also, that as words spoken by an influential person would have a greater
tendency to make a fixed impression than if spoken by one without in-
fluence, it is competent for the plaintiff to prove, in an action of slander,
that the defendant was a person of influence in the community.

*Held,* also, that after the defendant had, under a plea of justification, been
permitted to prove by a witness in whose possession one of the stolen
bills was found, that he got it of the plaintiff, and that he had taken it
back on request, it was competent for the plaintiff to prove that the wit-
ness, when first inquired of as to where he got the bill, had answered
that he had got it of another person than the plaintiff.

Thursday,        APPEAL from the *Carroll* Circuit Court.
February 6.
HANNA, J.—*Kirlin* sued *Justice* for slander, averring that
on, &c., at, &c., he was post master, carried on a grocery,

and worked at his trade of shoe and boot making, and was deservedly a person of good name, &c., and that theretofore, a certain amount of money, to wit, $50, of one *Andrew McDonald* had been stolen, &c., by some person or persons, and the defendant well knowing the premises, but contriving, &c., did on, &c., at, &c., falsely, &c., speak and utter, of and concerning the said larceny, and of and concerning the plaintiff, the false, &c.   Here several sets of words are set forth, some containing charges slanderous in themselves, and some that were not of themselves slanderous, such as, "he is the man that took the money, I know it," with an inuendo that plaintiff meant, &c.

There was a demurrer to the complaint, on the ground that it did not state facts sufficient, which was overruled.   There was no objection taken to the sets of words separately.

The objection urged here to the complaint is, that it does not aver the innocence of the plaintiff of the larceny.   We shall not stop to discuss the question of whether such an averment was necessary or not, for it appears to us the allegation that the speaking was false, sufficiently covers the objection made.

One *Blue* had testified that the defendant used the following language in speaking of the money of *McDonald* that had been stolen.   "*Kirlin* was the man who took the money, and I know it."

The plaintiff then asked this question of the witness, "what did *Justice* mean by the language you have stated he made use of?"   Answer.   "He meant, I suppose, from the way I took it, that *Kirlin* was the man who stole the money."

There was an objection to the question, &c., overruled. It is now insisted this ruling was wrong.   There is no averment in the pleadings, by way of inducement or explanation of the language laid as having been used, other than as herein set forth.   As the language here proved to have been spoken, and the corresponding words laid in the complaint do not, *per se*, convey the meaning the plaintiff would wish to assign to them, a prefatory inducement was necessary to show that they were actionable.   In such case four positive

allegations would appear to be required: *First.* The fact of such larceny. *Second.* A speaking by the defendant, with reference to such larceny. *Third.* The words spoken. *Fourth.* That the defendant meant thereby to impute larceny to the plaintiff in that transaction. As there was no averment that any of the words alleged, or proved to have been used, had a local or provincial meaning, we are of opinion that the speaking of the words, with the circumstances attending the same, should have been detailed to the jury, and let them judge of the meaning. 3 Ex. Rep. 200 ; *Harrison* v. *Bevington*, 8 C. & P. 594; 2 Gr. Ev., § 417.

The next witness, one *Greene*, was asked a very similar question, and permitted to answer in like manner, namely, "what did the bystanders understand *Justice* to mean by the language you said he used? The language used was, "Mr. *Kirlin* was the man that took the money." We do not perceive but that the same objections existed to this as to the former ruling.

We are not able to see the necessity of the inquiry of either witness, under the circumstances, for the testimony of each, we think, showed that the speaking was in reference to the larceny of the money of *McDonald*, outside of their answers to the interrogatories.

We are of opinion that, under the circumstances, if the proceeding in asking and eliciting answers to said questions and the rulings thereon, were not strictly correct, yet that no injury could thereby have resulted to the defendant.

This witness, in detailing the conversation that occurred, stated, that something was said about a one dollar bill, and about Mr. *Buckly* having got the bill of *Kirlin*.

The plaintiff then asked the witness this question, "Is the *Buckly* of whom you speak, the same person that was taken up for stealing, two or three weeks ago?" Over the objection of the defendant the witness was permitted to answer in the affirmative.

The answer filed was, 1. Justification, in this, that plaintiff had stolen said $50. 2. Justification, because he had stolen one dollar, and that it was the same, &c. of which defendant spoke. 3. In mitigation that a larceny had been

committed, and rumors and suspicions had fixed upon plaintiff, &c., whereupon, &c. 4. General denial.

It is insisted that the inquiry was intended to convey, to the jury, the impression that *Buckly* had been arrested for the larceny charged to have been committed, and thus ward off from *Kirlin* the imputations that might be cast upon him, by the evidence in reference thereto.

So far as the evidence had progressed at the time the question was put, there was nothing implicating either *Buckly* or *Kirlin* in said larceny. It is true that it was afterward developed, by the evidence of other witnesses, that a one dollar bill, identified by *McDonald* as one he had lost, was found in the hands of one *Buckly*, who, on being apprized of its identity, presented it to *Kirlin*, on the ground that he had received it of him, and that *Kirlin* gave him other money for it. The question was therefore premature, except for the mere purpose of identifying the person, and, perhaps, raising an inquiry in the minds of the jury as to his character. It did not necessarily imply that he had been arrested for that larceny. The inquiry was not afterward pursued by either party, to show that he had been arrested, nor was he a witness, nor any evidence of the reason for his not being one. Nevertheless, we can not see that any particular harm could result from the ruling objected to, especially as the defendant, for ought that appears, could have introduced *Buckly* as a witness, to explain the transaction and show his innocence.

One *Farneman* was then introduced, who was asked a question as to the feelings of the parties towards each other at the time when the words were spoken; and answered, they were unfriendly. This question was then propounded by plaintiff: "What do you know, if any thing, of the defendant having malicious feelings towards plaintiff." Over defendant's objection, witness was permitted to answer as follows: "The state of feeling then was not good between them; my judgment is that the defendant was rather maliciously disposed against the plaintiff." It is objected to the question, that it was in the present tense, had relation to his feelings at the time it was propounded, and was therefore

Nov. Term, 1861.

JUSTICE
v.
KIRLIN .

objectionable. Without doubt it was open to the objection made, and an answer should not have been allowed. But as the answer was given, when we come to examine it, so far as *this* objection extends, we do not see any harm that could arise from such answer. The witness, perhaps, keeping in view the previous question, as well as the one then submitted to him, appears to have directed his answer to some previous time, and there was nothing that had preceded this answer, fixing any prior period of time, except that of the speaking of the words, to which the word "then" in the answer must therefore be referred. After the examination of several other witnesses, relative to the feeling between the parties, and various statements of defendant, this question was put, by the plaintiff to *Andrew McDonald*, a witness: "State the defendant's position in society, as to being influential or otherwise, in the community where he resided." Over the objection of defendant, he was permitted to answer: "He was an influential man, still he had a good many enemies."

We can not see any bearing the question had on the issues being tried, unless it might be in reference to the measure of damages. Would it have the effect to influence the jury in assessing damages; and if yea, was it admissible for that purpose? Certainly an opinion given, or words spoken, by an influential person, would have a greater tendency to make a fixed impression, than if spoken by one without influence. It is more than probable, therefore, that such proof did make an impression upon the jury in fixing a standard by which to estimate the damages. We are of opinion the evidence was properly admitted for that purpose. If the parties were strangers to the jury—and whether or not, they should decide from the evidence before them, and must therefore be informed of the probable extent of the injury to be enabled to estimate the damages. 2 Gr. Ev., § 269, and note.

*Aaron Buzzard*, a witness, stated, on the part of the plaintiff, that he was at the time of the alleged larceny acting as a clerk in a store, in, &c., and had been requested to keep a look out for a one dollar bill with *Jesse Dillon's* name on the back of it; that about a week thereafter Mr. *Buckly*

brought in a bill filling the description, and gave it to him in payment for goods.

The bill was presented to the witness and identified as the one returned to *Kirlin* by *Buckly*. The plaintiff then asked the witness, " What *Buckly* said about the bill, and where he got it, when you asked him where he got it, if you did ask him." Objected to. Answer: " *Buckly* at first said, when I asked him where he had got the bill, that he got it of *John Peck;* he afterward said that he got it of *Kirlin*. He did not appear to be excited. He went out of the store and was gone a few minutes, when he came back and said that he was glad that he had found out where he had got the bill, that he got it of *Kirlin*, for if he had not, the people would have suspicioned him."

It is urged that this evidence was irrelevant—was mere hearsay. Of course it was not intended by the plaintiff to fix guilt or the suspicion thereof upon himself, but to weaken the force of the testimony which had preceded it in regard to the return of the bank note to the plaintiff by *Buckly*. The evidence shows that several persons had been commissioned by *McDonald* to assist in detecting the guilty parties, this witness and defendant among others. The bank note presented to witness was one of the clues by which the detection was anticipated. *Buckly* having it in his possession so soon after the larceny, made it incumbent upon him to account for that possession—to rebut any presumption that might arise. We need not discuss the question of whether his statement, of where he obtained it, would be evidence against any third person. We do not understand the purpose to have been to show that *Peck* was the guilty party; but to show that, when first questioned, *Buckly* was not so certain, as his acts afterward indicated, that *Kirlin* was the person from whom he obtained the note, and perhaps to show that he was anxious to avert suspicion from himself. The defendant had shown acts and statements of *Buckly* in returning the bill to *Kirlin*. This evidence had a tendency, perhaps but very slight, to contradict such acts and statements, and was therefore admissible.

The last point made is that the damages, five hundred

Nov. Term,
1861.

NEW
ALBANY, &c.
RAILROAD CO.
v.
HIGMAN.

dollars, were excessive. It may be true that the acts of the plaintiff, as shown by the evidence, and the question of doubt thrown over his general character for honesty, should have mitigated the damages; but still we are not prepared to say, from any thing in the record, but that the jury did weigh these matters in their deliberations and permit them to enter into their verdict.

We have thus noticed the points made in the brief of counsel.

*Per Curiam.*—The judgment is affirmed, with 3 per cent. damages and costs.

*D. D. Pratt* and *L. B. Sims*, for the appellant.